# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CAMERON BELK, Sr., #468008,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 19-cv-00499-JPG |
| ) | |
| **RICHARD WATSON,** ) | |
| **TAMMY GRIME,** ) | |
| **SHAN COLLINS,** ) | |
| **WEXFORD HEALTH CARE** ) | |
| **SOURCES, INC.,** ) | |
| **DENNIS P. LARSON,** ) | |
| **ARAMARK CORRECTIONAL** ) | |
| **SERVICES, LLC,** ) | |
| **MARY ROBINSON-DAVIS,** ) | |
| **JANICE McCARRON,** ) | |
| **DELANCEY MOORE,** ) | |
| **MICHAEL BUJNAK,** ) | |
| **RHONDA DUBOSE,** ) | |
| **and MELODY MURRY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

Now before the Court for consideration are Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Wexford Health Care Sources, Inc. and Dennis Larson (Doc. 161); Michael Bujnak, Shan Collins, Tammy Grime, Delancey Moore, and Richard Watson (Doc. 163); Aramark Correctional Services, LLC, Janice McCarron, and Mary Robinson-Davis (Doc. 165); Melody Murry (Doc. 195); and Rhonda Dubose (Doc. 231). On March 23, 2021, the Court held an evidentiary hearing on all five motions pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). At the conclusion of the hearing, the Court ordered Shan Collins to supplement his testimony with an affidavit. (*See* Doc. 244). Collins filed his

1

supplemental affidavit on April 1, 2021, and Belk filed a responsive affidavit on April 9, 2021. (*See* Docs. 252-54). Based on all submissions of the parties and the evidence and testimony presented at the hearing, the Court finds that Belk exhausted his available remedies for Count 2 against Dr. Larson and Count 3 against Dr. Larson and Shan Collins. However, he failed to exhaust his available remedies for all other claims as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Accordingly, Defendants' Motions for Summary Judgment shall be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiff Cameron Belk, Sr. is a pretrial detainee at St. Clair County Jail ("Jail") in Belleville, Illinois. On May 13, 2019, he filed a civil rights complaint pursuant to 42 U.S.C. § 1983. In it, Belk challenged the conditions of his confinement during his pretrial detention, which began in February 2019. (Doc. 1).

Belk claims that he suffered a major stroke in June 2017 prior to his arrival at the Jail. (Doc. 1). As a result, he required special medical care, medication, diet, and exercise to maintain his health and manage his high blood pressure. Although Belk informed Sheriff Watson about his medical history when he arrived at the Jail on February 8, 2019, the sheriff denied his request for blood pressure medication until after Belk completed medical intake, which was delayed. Following intake four days later, Belk's blood pressure was not monitored, and he was given a high sodium diet. He allegedly suffered additional strokes. Belk was denied access to physical rehabilitation, a right ankle brace, and a right foot prosthetic. At the same time, he was housed in poor living conditions with "slow to no" response from staff. (*Id*.).

In his initial Complaint, Belk brought claims against Sheriff Richard Watson under the First, Fourth, Eighth, and Fourteenth Amendments. (Doc. 1). He requested money damages, injunctive relief, and release from confinement. (*Id.* at pp. 5-8).

Following screening of this matter under 28 U.S.C. § 1915A, the Court allowed Belk to proceed with two claims against Sheriff Watson. This included a Fourteenth Amendment claim for delaying Belk's medical intake evaluation and access to blood pressure medication for four days in February 2019 (Count 1) and a Fourteenth Amendment claim for subjecting Belk to unconstitutional living conditions at the Jail (*i.e.*, overcrowding, poor temperature control, poor ventilation, and increased risk of infection) (Count 4). (*See* Doc. 11). The Court dismissed five other claims (Counts 2, 3, 5, 6, and 7) against the sheriff. (*Id.*).

On September 23, 2019,[1] Belk requested leave to file a First Amended Complaint, which was granted. (Docs. 49-51). In it, he set forth ten claims against Sheriff Watson and thirteen additional defendants (Tammy Grime, Shan Collins, Wexford, Dennis Larson, Aramark, Aramark Correction Services, Mary Robinson-Davis, Janice McCarron, John Doe 1 (Delancey Moore), and John Doe 2 (Michael Bujnak), Jane Doe 1 (Melody Murry), Jane Doe 2 (Rhonda DuBose), and Jane Doe 3 (Deborah Hale)). The Court recharacterized his claims, as follows:

**Count 1 -** Watson, Wexford, Jane Doe 1 (Melody Murry), Jane Doe 2 (Rhonda DuBose), and Jane Doe 3 (Deborah Hale) violated Belk's Fourteenth Amendment rights by delaying or denying him medical care and access to stroke medication from February 8-11, 2019.

**Count 2 -** Larson violated Belk's Fourteenth Amendment rights when he refused to conduct testing and evaluation for stroke-related damage to Belk.

**Count 3 -** Watson, Wexford, Grime, Collins, and Larson violated Belk's Fourteenth Amendment rights by denying him access to therapeutic aids.

---

[1] Belk submitted a Motion for Leave to File First Amended Complaint on September 23, 2019, along with his proposed First Amended Complaint. (Doc. 49). The Court granted the motion and filed the First Amended Complaint in CM/ECF on November 20, 2019. (Docs. 50-51).

3

|  |  |
|---|---|
| **Count 4 -** | Watson, Grime, and Collins violated Belk's Fourteenth Amendment rights by denying him access to adequate exercise and recreation opportunities. |
| **Count 5 -** | Watson, Grime, and Collins violated Belk's Fourteenth Amendment rights by denying him sufficient access to emergency call buttons in I Block. |
| **Count 6 -** | Grime, Collins, John Doe 1 (Delancey Moore), and John Doe 2 (Michael Bujnak) violated Belk's Fourteenth Amendment rights by directly or indirectly threatening him with physical violence. |
| **Count 7** - | Watson, Grime, and Collins violated Belk's Fourteenth Amendment rights by refusing to remove mold from Belk's living quarters in LL-D Block. |
| **Count 8 -** | Watson, Grime, Collins, Aramark Correctional Services, LLC, and Robinson-Davis, violated Belk's Fourteenth Amendment rights by exposing him to moldy mealtime containers. |
| **Count 9 -** | Watson, Grime, Collins, Aramark Correctional Services, LLC, Robinson-Davis, and McCarron violated Belk's Fourteenth Amendment rights by serving him inadequately cooked meals on unclean trays. |
| **Count 10 -** | Watson, Grime, and Collins violated Belk's Fourteenth Amendment rights by housing him in overcrowded conditions with poor temperature controls in I Block and LL-D Block. |

(*See* Doc. 50). Although he filed two additional amended complaints, Belk's allegations and claims against the defendants remained virtually unchanged.[2] (Docs. 142-43, 178).

## MOTIONS FOR SUMMARY JUDGMENT

Defendants seek summary judgment based on Belk's failure to exhaust his available administrative remedies before filing suit. (*See* Docs. 161, 163, 165, 195, and 231). According to

---

[2] Although Belk submitted a Second Amended Complaint on March 18, 2020 and a Third Amended Complaint on June 19, 2020, he primarily did so to identify or dismiss defendants. In a Second Amended Complaint, he simply provided the correct names for several defendants. (Docs. 142 and 143). This includes Delancey Moore (John Doe 1), Michael Bujnak (John Doe 2), Melody Murray (Jane Doe 1), Rhonda DuBose (Jane Doe 2), and Deborah Hale (Jane Doe 3), Aramark Correctional Services, LLC (Aramark Correction Services, Inc.), Shan Collins (Assistant Jail Superintendent / Captain Collins), Mary Robinson-Davis (Mary Robinson), and Janice McCarron (Janice McCarren). He also dismissed Aramark/Aramark Services, Inc. (*Id*.). In the Third Amended Complaint, he corrected the spelling of a single defendant, Melody Murry. (Doc. 178). Deborah Hale was subsequently dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m). (*See* Doc. 237).

4

Defendants, Belk was provided with the grievance procedures when he arrived at the Jail. However, his file contains only two Captain's requests/complaints and no grievances that predate this lawsuit. (*Id*.). Although Belk filed approximately four dozen additional Captain's requests/complaints after commencing this lawsuit, Defendants maintain that none satisfy the PLRA's exhaustion requirement.

Belk admits that he had access to a copy of the Jail's grievance procedure. (*See also* Docs. 203, 204, 205, 209, and 234). However, he found the procedure confusing. Belk claims that he nevertheless submitted complaints and other "writings" before and after filing the original Complaint that satisfy the PLRA's exhaustion requirement. (*Id*.).

## LEGAL STANDARDS

Lawsuits filed by inmates are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA states, in no uncertain terms, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit, and the Supreme Court has interpreted the PLRA to require "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). To properly exhaust, an inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Strict compliance with the Jail's grievance process is required. *Locket v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). A plaintiff cannot satisfy the

5

exhaustion requirement by filing an untimely or procedurally defective grievance. *Woodford*, 548 U.S. at 83.

The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 93. The requirement allows the Jail's administration an opportunity to fix the problem and mitigate the damage to a plaintiff. *Pozo*, 286 F.3d at 1023-24. Allowing otherwise would frustrate the purpose of the grievance process. *Porter v. Nussle*, 534 U.S. 516, 526 (2002).

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary judgment motion based on failure to exhaust administrative remedies typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Pavey v. Conley*, 544 F.3d at 742. "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are decided by the judge and not a jury. *Id*. at 740-41.

## ANALYSIS

As a detainee at St. Clair County Jail, Belk was required to comply with the grievance procedure outlined in the Jail's Detainee Rules and Regulations Handbook. (*See* Doc. 162, ¶ 2, Ex. 1; Doc. 163, ¶ 3; Doc. 166-2, p. 12; Doc. 196, ¶ 2, Ex. 1, pp. 1-2; Doc. 232, ¶ 2, Ex. 1, pp. 1-2). This procedure requires a detainee to first submit a Captain's request to an officer to address his complaint before initiating the formal grievance process. (*Id*.) ("A Captain[']s request must be submitted prior to the grievance procedure."). If the officer does not respond within fifteen calendar days, the detainee must inform the Jail Superintendent (Tammy Grime) that his request was ignored. (*Id*.) ("If no response is received within 15 calendar days, then the Jail

Superintendent needs to be notified."). Only after resolution of the Captain's request may the detainee initiate the grievance process, by providing a written grievance to the shift supervisor detailing the particulars of the inmate's complaints. (*Id*.) (*see* "Step 1"). Yellow grievance forms are available for this purpose. The shift supervisor must respond within three days. (*Id*.). If the detainee is not satisfied with the response, he may submit the written grievance to the Assistant Jail Superintendent (Captain Shan Collins) within forty-eight hours. (*Id*.) (*see* "Step 2"). Within three days of receiving the Assistant Jail Superintendent's decision, the detainee should submit the grievance to the Jail Superintendent. (*Id*.). The Jail Superintendent will then issue a final decision and return the grievance to the detainee within three days. (*Id*.). Finally, "superintendent[']s call" is available for matters that cannot be handled through the normal channels. (*Id*.).

Belk testified that he received a copy of the Jail's Detainee Rules and Regulations Handbook containing the grievance procedure on February 8, 2019, and he had occasion to use the grievance process soon thereafter. However, he never filed a grievance on the Jail's standard yellow grievance form during this time period. Belk was unfamiliar with this form and never filed a single one. He first learned of the form when his attorney provided him with a copy sometime around October 2020. When he asked officers for a grievance form as early as July 2019, he maintains that they were also unfamiliar with it. Unidentified officers instructed Belk to use Captain's request/complaint forms for his grievances.

Belk asked for Captain's request/complaint forms,[3] but he describes them as difficult to obtain. He nevertheless filed dozens of these forms with staff between February 2019 and April 2020. (*See* Doc. 163-5). In connection with the pending motions, he also submitted another two dozen Captain's request/complaint forms that he claims were never answered. (Doc. 206-1, pp. 1-

---

[3] Testimony revealed that the Captain's complaint forms and Captain's request forms serve the same purpose and were used interchangeably during the relevant time period.

26). Given this, the Court finds that Belk's testimony regarding the availability of Captain's request/complaint forms lacking in credibility.

During the same time period, Belk also filed health services request forms, which are distinct from the Captain's requests/complaints forms. These forms are typically routed directly to the medical unit for handling. Detainees who are not satisfied with the medical unit's response are free to initiate the grievance process. Although a precondition to the formal grievance process, the health services request forms are not a part of the Jail's grievance process.

Captain Collins testified that staff members look to the substance of the Captain's requests/complaints when deciding how to handle them. (Doc. 252, ¶ 5). They handle each matter according to the action or remedy requested. (*Id.*). Against this backdrop, the Court reviewed all exhibits offered in connection with the pending summary judgment motions. These "writings" include Captain's request forms, Captain's complaint forms, health services request forms, and Belk's medical and dietary logs, among other documents. These documents were filed repeatedly throughout the course of litigation, as exhibits to the summary judgment motions, responses in opposition to summary judgment, and supplemental affidavits. (*See, e.g.*, Doc. 162-2, pp. 1-52; Doc. 163-5, pp. 1-52; Doc. 166-3, pp. 2-53; Doc. 196-2, pp. 1-52; Doc. 206, pp. 1-6; Doc. 206-1, pp. 1-26; Doc. 206-2, pp. 1-22; Doc. 214, pp. 1-54; Doc. 232-2, pp. 1-52; Doc. 252-1, pp. 1-52). They were also introduced as exhibits at the *Pavey* hearing. (*See* Docs. 246-52, Exs. A-H and 2, 5, and 6). The Court has reviewed them all and concludes that they do not support a finding that Belk satisfied the PLRA's exhaustion requirement as to any pending claims, except Count 2 against Dr. Larson and Count 3 against Dr. Larson and Captain Collins.

## **Claims Against Sheriff Watson**

Belk filed his original Complaint against Sheriff Richard Watson on May 13, 2019. (Doc. 1). He asserted seven claims against the sheriff. Belk was required to exhaust all available remedies for these claims *before* filing suit. Exhaustion is a "precondition to suit," and dismissal is appropriate if the plaintiff fails to satisfy that condition. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005) (quoting *Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 535 (7th Cir. 1999)). The general rule is that a prisoner must exhaust his administrative remedies before filing suit, instead of filing suit and then exhausting his remedies while litigation is pending. *See, e.g., Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004) (a "sue first, exhaust later" approach is not acceptable). "A district court has no 'discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.'" *Barnes*, 420 F.3d at 677 (quoting *Perez*, 182 F.3d at 535). "[P]ursuing administrative remedies while litigation is underway does not suffice." *Chambers v. Sood*, 956 F.3d 979, 981 (7th Cir. 2020).

Belk's grievance file contains only two Captain's requests/complaints that pre-date the original Complaint, and they do not save his claims against the sheriff. The first Captain's request, dated March 6, 2019, seeks permission to speak with a counselor, named Counselor Janelle, who reported that Belk "wanted the phone number for Cahokia Police . . . [and] his blood pressure checked (hx of stroke)." (*See* Doc. 162-2, p. 1; Doc. 203, ¶ 3). The second Captain's request, dated May 2, 2019, seeks a refund for "faulty boxers," which was granted. (*See* Doc. 162-2, p. 2). In other words, the first Captain's request is addressed to a nonparty, *i.e.*, Counselor Janelle, and the second Captain's request addresses a non-issue, *i.e.*, faulty boxers. (Doc. 162-2, pp. 1-2). Belk offered no credible testimony that either one constituted a grievance, let alone a properly exhausted one. The Court now finds that neither Captain's request addresses any claims against the defendant

9

nor constitutes evidence of proper exhaustion under the PLRA.  As explained in more detail below, the Court also finds no evidence of proper exhaustion of the claims against Sheriff Watson elsewhere in the record.

### Claims Against Tammy Grime, Shan Collins (Except Counts 2 and 3), Wexford Health Care Sources, Inc., Aramark Correctional Services, LLC, Mary Robinson-Davis, Janice McCarron, <u>Rhonda DuBose, and Melody Murry</u>

On September 23, 2019, Belk filed a First Amended Complaint asserting ten claims against thirteen defendants, and he was allowed to proceed with all ten claims.[4]  (Docs. 49-51).  Belk was required to fully exhaust his available remedies for all new claims against the additional defendants by the date he submitted the First Amended Complaint on September 23, 2019.  This is due to an exception to the general rule (requiring exhaustion before suit) for amendments to complaints—an issue of particular importance here where the Court granted Belk leave to amend the complaint several times.  A prisoner can amend the complaint to add a new claim or defendant, if he fully exhausts his administrative remedies before seeking leave to amend.  *See, e.g., Cannon v. Washington*, 418 F.3d 714, 719-20 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d at 678; *Getty v. Santos*, No. 18-cv-1134-MAB, 2020 WL 2832465, at *4-6 (S.D. Ill. May 31, 2020).  This exception does not allow a plaintiff to file an amended complaint in order to replead previously unexhausted claims and thereby circumvent the PLRA's exhaustion requirement.  Rather, it allows a plaintiff to raise one or more new, properly exhausted claims against new defendants, as long as he has fully exhausted all available remedies before haling the new defendants into court.  *Barnes v. Briley*, 420 F.3d at 678.  In this respect, an amended complaint serves as the functional equivalent of a new complaint, marking the point in time when exhaustion as to those new claims

---

[4] More recently, on March 29, 2021, the Court granted a motion to dismiss Count 6 with prejudice.  (*See* Doc. 249).  This resulted in dismissal of Delancey Moore and Michael Bujnak from this action.  (*Id.*).

and/or new defendants must be complete. *Id*. at 678 (citation omitted). Under this exception, Belk's deadline for exhausting his administrative remedies as to all new claims and defendants was September 23, 2019, the date he submitted the First Amended Complaint.

With a single exception for Counts 2 and 3, the Court found no evidence or testimony suggesting that Belk exhausted his available remedies as to any claim or defendants prior to September 23, 2019. The Court reviewed all Captain's requests, Captain's complaints, health services requests, and personal logs submitted in connection with the pending motions. There were more than four dozen.

The vast majority were submitted after September 23, 2019. Any writings submitted after this date simply do not assist Belk in overcoming summary judgment on the issue of exhaustion. Though numerous, Belk's written requests, complaints, or other writings submitted after this deadline were untimely.

A few were submitted before September 23, 2019, and most of these address non-issues or non-parties. Many do not mention any defendants at all or include enough information to put the defendants on notice of potential claims against them. Several address issues that are not the subject of this action, such as Belk's complaints about faulty boxers, excessive force, personal property, cell shakedowns, and refund requests, among other issues. In fact, the Court found virtually no documentation of Belk's efforts to exhaust his administrative remedies as to Counts 1, 4, 5, 7, and 10 before September 23, 2019.

With regard to Counts 8 and 9 addressing inadequately cooked meals served on unclean and moldy food containers, Belk asserts that his complaints/requests about these issues were ignored and/or never returned. He produced copies of several. (Doc. 206-1, 206-2 and 206-3). Belk was wrong to terminate his efforts to exhaust his remedies when he received no response to

11

an initial complaint/request. The grievance procedure covers this scenario and does not allow Belk to simply skip the grievance process altogether. The Jail's grievance procedure explicitly requires Belk to *begin* the grievance process, if a complaint or request is ignored. (Doc. 162, ¶ 2, Ex. 1). It states, "A Captain[']s request must be submitted prior to the grievance procedure." (*Id*.). And, [i]f no response is received within 15 calendar days, then the Jail Superintendent needs to be notified." (*Id*.). Belk must also commence the grievance process as described in Step 1 and Step 2 of the Jail's grievance procedure. (*Id*.).

The Court also took note of two self-styled "medical" complaints regarding dietary issues that did receive responses and were dated September 11 and 17, 2019. (Doc. 162-2, pp. 11-13). However, neither one addresses moldy mealtime containers, unclean trays, or inadequately prepared food. They address Belk's complaint about the content of his diet. The Court also found no indication that Belk submitted them as part of the Jail's grievance process or arguably exhausted them until after September 23, 2019. (Doc. 162-2, pp. 14-16).

Further, the Court rejects as inadmissible hearsay Belk's medical and dietary logs submitted in conjunction with Counts 8 and 9 (and all other claims). Belk testified that someone else helped him prepare at least one of these logs by transcribing information from his personal notes. However, Belk could not identify the individual. The Court otherwise found Belk's testimony about both logs lacking in substance, support, and credibility.

Finally, the Court rejects Belk's argument that the grievance process was unavailable to him. Exhaustion as a precondition to suit is limited to those remedies that are "available." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). A grievance procedure is considered available if it is "capable of use" to obtain "some relief for the action complained of." *Booth v. Churner*, 532 U.S. 731, 738 (2001). The process is considered unavailable in three situations: (a) when it operates as

a simple dead end because officers are either unable or unwilling to provide any relief to aggrieved inmates; (b) when prison administrators thwart inmates from taking advantage of the grievance process through misrepresentation, intimidation, or other machinations; and (c) when the administrative scheme is so opaque that it becomes essentially incapable of use. *Ross v. Blake*, -- U.S. --, 136 S.Ct. 1850, 1858-60 (2016).

The Court rejects Belk's argument that the Jail's grievance process was unavailable for any of these reasons. As for the first situation, Belk obtained relief for numerous complaints, as noted directly on the forms (*e.g.*, he received a refund for faulty boxers, dietary changes at his request, and off-site referrals, etc.). As to the second situation, Belk describes no misrepresentations or machinations that prevented him from obtaining relief through the grievance process. He points to the staff's failure to respond to some of his requests and also complains about the lack of access to the yellow grievance forms. However, the parties' testimony and evidence demonstrate that staff consistently responded to Belk's written complaints/requests based on the substance of the complaint and the relief sought—regardless of the form used. Finally, Belk argues that the Jail's grievance process was so opaque that it was, for all practical purposes, incapable of use. (Docs. 203-05, 209, and 234). He describes the Jail's grievance procedure as convoluted. (*Id.*). Although he cites two cases from this District characterizing St. Clair County Jail's grievance procedure as lacking, he points to no case in which the grievance procedure was deemed unavailable as a result. *See Medford v. Fitz*, 2018 WL 6696785, at *4 (Memorandum and Order, S.D. Ill. dated Dec. 20, 2018); *Teen v. Doe*, 2019 WL 2396934, at *11-12 (Report and Recommendation, S.D. Ill. May 21, 2019), *adopted Teen v. Doe*, 2019 WL 2393566 (S.D. Ill. June 6, 2019). This Court agrees that the Jail's procedure is not a model of clarity and could benefit from reorganization of the procedure into chronological, step-by-step order. With that said, the

procedure is not fatally flawed and is certainly capable of use by detainees, as written and as evidenced by Belk's own use of the process to obtain relief for numerous complaints.

## Counts 2 and 3 against Dr. Larson and Shan Collins

Counts 2 and 3 address inadequate medical care Belk received at the Jail for stroke-related issues. Count 2 is a Fourteenth Amendment claim against Dr. Larson for refusing to conduct testing and evaluation for stroke-related damage to Belk. Count 3 is a Fourteenth Amendment claim against Dr. Larson, Captain Collins, Warden Grime, Sheriff Watson, and Wexford for denying Belk therapeutic aids.

Belk's complaint forms, dated August 7, 2019 and August 11, 2019, address both issues. (*See* Docs. 162-2, pp. 6-8). His request for treatment was addressed by medical staff (RN Shannon Williams) on August 8, 2019. (Doc. 162-2, pp. 6-7). When he again complained about the denial of medical care for stroke-related health issues in a complaint form addressed to Captain Collins on August 11, 2019, an officer noted that the complaint was "forward[ed] to supervisor" and that Belk was seen by Dr. Larson. (Doc. 162-2, p. 8). The supervisor then noted that it was "forward[ed] to Capt" the same day. (*Id*.). The captain/jail superintendent responded that "[p]er medical, Detainee Belk is in the process of getting approved for offsite referral." (*Id*.). Although Belk did not use a yellow grievance form to submit this grievance, Captain Collins' testimony is that Captain's requests and Captain's complaints were treated as such when the substance of the complaint and relief requested suggests that a detainee has a grievance. And, although he did not appeal this decision to the Jail's Superintendent (Tammy Grime) or do so within three days of the captain's response as required in Step 2 of the grievance process, a reasonable person would understand the captain's response to mean that the issue was resolved in Belk's favor. The captain's response obviated any need to complete Step 2. By the time Belk likely realized his

requests were not resolved, the time for completing Step 2 had expired.  Belk instead filed a First Amended Complaint naming Dr. Larson and Captain Collins in Counts 2 and 3 approximately six weeks later.  The Court now finds that Belk exhausted his available remedies as to Count 2 against Dr. Larson and Count 3 against Dr. Larson and Captain Collins.

## DISPOSITION

**IT IS ORDERED** that the only claims remaining in this action are **COUNT 2** against **DENNIS LARSON** and **COUNT 3** against **DR. LARSON** and **SHAN COLLINS**.  The Court renders the following decisions regarding all pending motions for summary judgment:

- The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Wexford Health Care Sources, Inc. and Dennis Larson (Doc. 161) is **GRANTED** as to Wexford Health Care Sources, Inc. and **DENIED** as to Dennis Larson.

- The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Michael Bujnak, Delancey Moore, Shan Collins, Tammy Grime, and Richard Watson (Doc. 163) is **DISMISSED** as **MOOT** with respect to **COUNT 6** and with respect to Michael Bujnak and Delancey Moore (*see* Doc. 249); **GRANTED** as to Tammy Grime and Richard Watson; and **GRANTED** as to **COUNTS 4, 5, 7, 8, 9,** and **10** against Shan Collins and **DENIED** as to **COUNT 3** against Shan Collins.

- The Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Aramark Correctional Services, LLC, Janice McCarron, and Mary Robinson-Davis (Doc. 165), Melody Murry (Doc. 195), and Rhonda DuBose (Doc. 231) are **GRANTED**.

**IT IS ORDERED** that **COUNTS 1, 4, 5, 7, 8, 9,** and **10** are now **DISMISSED** without prejudice based on Belk's failure to exhaust his available administrative remedies for these claims.

**IT IS ORDERED** that the following defendants are **DISMISSED** without prejudice: **RICHARD WATSON, TAMMY GRIME, WEXFORD HEALTH CARE SOURCES, INC., ARAMARK CORRECTIONAL SERVICES, LLC, MARY ROBINSON-DAVIS, JANICE McCARRON, RHONDA DUBOSE,** and **MELODY MURRY**.  The Clerk's Office is

**DIRECTED** to **TERMINATE** these defendants as parties in CM/ECF and enter judgment accordingly at the close of this case.

    **IT IS SO ORDERED.**

    **DATED: 6/4/2021**

                                                    s/J. Phil Gilbert_____
                                                    **J. PHIL GILBERT**
                                                    **United States District Judge**