UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CAMERON BELK, SR.,

        Plaintiff,

    v.

DENNIS P. LARSON,

        Defendant.

Case No. 19-cv-499-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of James S. Cole, counsel for plaintiff Cameron Belk Sr., for attorney's fees (Doc. 337). Belk succeeded at trial on parts of Counts 2 and 3 against defendant Dennis P. Larson and obtained a verdict in the amount of $32,000. Dr. Larson has responded to the motion (Doc. 354). For the following reasons, the Court will grant the motion to the extent it requests attorney's fee in the amount of $48,000, $8,000 of which will come from Belk's judgment award, leaving $40,000 to be assessed against Dr. Larson.

The Court also considers the parties' dueling bills of costs: Belk's (Doc. 336), to which Dr. Larson has responded (Doc. 346), and Dr. Larson's (Doc. 352), to which Belk has responded (Doc. 536). Because the Court finds Belk was the prevailing party, the Court awards Belk costs in the amount of $5,909.27 and strikes Dr. Larson's bill of costs.

## I. Background

Belk filed this civil rights action pursuant to 42 U.S.C. § 1983 complaining of his conditions of confinement while he was a detainee at the St. Clair County Jail ("Jail") beginning February 8, 2019, which he asserted violated his Fourteenth Amendment due process rights in a variety of ways. Belk filed this action *pro se* raising seven separate causes of action against St. Clair County Sheriff Richard Watson in his Complaint (Doc. 1).

The Court appointed Cole as counsel for Belk shortly after the case commenced, and counsel prepared an Amended Complaint asserting ten causes of action—including medical care, threats of violence, mold in the cell blocks, food service, and overcrowding—against fourteen defendants, some of them unidentified (Doc. 51).  Cole represented Belk in a preliminary injunction hearing which was continued and then voluntarily cancelled.  Counsel then filed the Second Amended Complaint asserting ten claims similar to earlier ones against thirteen identified defendants (Doc. 143).  Counsel represented Belk through litigation of motions for summary judgment for failure to exhaust administrative remedies which went to hearing (Docs. 161, 163, 165, 195, & 231), and a motion to dismiss for failure to state a claim (Doc. 154). Counsel filed the Third Amended Complaint to correct a misspelled name (Doc. 178), and one unserved defendant was voluntarily dismissed.  The motions resulted in disposition in the defendant's favor of all claims except Count 2 against Dr. Larson and Count 3 against Dr. Larson and Correctional Captain Shan Collins.  Counsel represented Belk through merits discovery and two summary judgment motions on the merits (Docs. 276 & 277).  The claims against Captain Collins were disposed of on summary judgment, leaving only parts of the claims against Dr. Larson for trial.

Counsel continued representing Belk through a three-day trial of Counts 2 and 3 in October 2023, more than four years after the Court assigned him the case.  In Count 2, Belk alleged that Dr. Larson, a doctor working at the Jail, refused to test, evaluate, or treat him for damage—including spasms, seizures, and other symptoms—that Belk believes were caused by a stroke he suffered before his detention and possible later strokes during his detention.  In Count 3, Belk alleged that Dr. Larson refused to authorize outpatient physical and occupational therapy sessions recommended by therapists and denied Belk access to therapeutic aids to help his

symptoms.  These claims were tried to a jury on October 2 to 4, 2023.  The jury found Dr.

Larson liable on these parts of Counts 2 and 3 and awarded Belk $32,000 in compensatory

damages.  It is on these successes that Counsel requests attorney's fees.

Counsel continues to represent Belk through post-judgment motion briefing for which he

has not yet sought compensation.

## II.. **Attorney's Fees**

Cole has served as Belk's counsel for more than four years and did a yeoman's work in

representing him at all stages.  He asks the Court to award him $255,360 in attorney's fees

pursuant to 42 U.S.C. § 1988 for work on this case.

Dr. Larson contends Belk's counsel is not entitled to a fee award because Belk was not

the prevailing party.  He further argues that under § 803(d) of the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e(d), Cole's fees must first come out of Belk's award and his rate

must be limited.  Dr. Larson also complains that Cole submitted bills for work not properly

billable, excessive, or unrelated to this litigation.

It is Belk's burden to establish entitlement to an award and documenting the support for

that award.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Vega v. Chi. Park Dist.*, 12 F.4th

696, 702 (7th Cir. 2021).  But once he provides evidence that the fee requested is reasonable, Dr.

Larson bears the burden of demonstrating it is unreasonable.  *Vega*, 12 F.4th at 702.  The

Supreme Court has observed that "[a] request for attorney's fees should not result in a second

major litigation."  *Hensley*, 461 U.S. at 437.

Federal law provides that the Court may, in its discretion, allow the prevailing party in a

§ 1983 case a reasonable attorney's fee.  42 U.S.C. § 1988(b).  Ordinarily, attorney's fee awards

under § 1988 begin with a lodestar calculation.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542,

551 (2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The lodestar method involves "multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate."  *Mathur v. Board of Trustees of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003); *Animal Legal Def. Fund v. Special Memories Zoo*, 42 F.4th 700, 707 (7th Cir. 2022).  "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue*, 559 U.S. at 551 (emphasis in original).

But what is given by § 1988 with one hand is taken away—or at least limited—by the other through the PLRA, which limits fee awards in cases brought by prisoners.[1]  42 U.S.C. § 1997e(d).  For example, if a plaintiff receives a money judgment, a part of that amount—up to 25%—must go toward paying the attorney's fee award, and the defendant can be liable for the balance of the fee award only up to 150% of the judgment amount.  42 U.S.C. § 1997e(d)(2).  The prisoner's attorney may not use his regular billing rate in the lodestar calculation but is limited to 150% of the rate paid to Criminal Justice Act attorneys appointed pursuant to 18 U.S.C. § 3006A.

A.   Prevailing Party Status

Belk is a prevailing party for attorney's fee purposes because he obtained a money judgment on a substantial part of his claims.  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992).  A judgment for damages in any amount, counts for prevailing party status

---

[1] Belk is considered a prisoner for purposes of the PLRA even though he was actually a pretrial detainee.  42 U.S.C. § 1997e(h) ("[T]he term 'prisoner' means any person . . . detained in any facility who is accused of . . . violations of criminal law . . . .").

for the purpose of attorney's fees under § 1988.  *Id.* at 113; *see Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir. 1997).

Belk has, however, achieved limited success.  To determine whether a party who achieved only limited success qualifies as a prevailing party, the Court considers three factors: "the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served."  *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring), *quoted in Hatcher v. Consol. City of Indianapolis*, 126 F. App'x 325, 327 (7th Cir. 2005).

The Court notes that this case, at its broadest, contained ten counts, four of which directly concerned his stroke-related medical needs (*see* Doc. 50).  The care Belk received in the Jail for his post-stroke treatment has always been a major issue in this case.  On that issue, he achieved substantial relief in the amount of $32,000.  Adequate care of detainees not convicted of crimes is always a significant issue, and the kind of verdict the jury gave Belk on this issue serves the public purpose of deterring Jails from providing pretrial detainees inadequate medical care.  Thus, even though Belk did not obtain complete relief in his case, he is still a prevailing party, and the Court exercises its discretion to award him attorney's fees.

Before moving to the lodestar calculation, the Court assesses the limits the PLRA places on any fee award.  First, the limit of the fee award for which Dr. Larson may be partially responsible is 150% of the $32,000 verdict, or $48,000.  Counsel's hourly rate may not exceed 150% of the CJA hourly rate, $164 in 2023.  That translates to $246 per hour for work done by Cole in 2023.  At that rate, Cole's reasonable fees would exceed $48,000 simply for the work he alone did in 2023—211 hours—so the Court focuses on that work only.  This is particularly appropriate because most of the work Cole did in 2023 concerned the counts on which Belk prevailed; most other counts had been disposed of in 2021 (Doc. 261).  To the extent specific

billing entries in 2023 may be questionable, the Court is confident that Cole's reasonable work done at the statutorily prescribed rate from 2019 through 2022 more than makes up for any error.

      B.    <u>Lodestar Calculation</u>

          1.   <u>Rate</u>

Attorney's fee awards begin with a lodestar calculation. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar method involves "multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate." *Mathur v. Board of Trustees of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003); *Animal Legal Def. Fund v. Special Memories Zoo*, 42 F.4th 700, 707 (7th Cir. 2022). "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551 (emphasis in original). It is strongly presumed to be sufficient because many relevant factors are already accounted for in that calculation. *Id.* at 552-53; *Animal Legal Def. Fund*, 42 F.4th at 707.

However, the Court has discretion to adjust the amount for factors specific to the litigation that the lodestar method did not take into account. *Animal Legal Def. Fund*, 42 F.4th at 707; *see Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 685 (7th Cir. 2022). Such factors can include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Cooper*, 42 F.4th at 682 (internal quotations omitted). They can also include the rejection of a substantial settlement offer, the proportionality between the damage amount and the fee request. *Id.* at 685, 686.

Cole requests an hourly rate of $275, lower than the going rate in St. Louis for civil rights plaintiff's counsel of $450-475 per hour, and lower than his own regular billing rate for litigation

of $350 per hour.

The Seventh Circuit Court of Appeals has clear set forth how to determine a reasonable hourly rate:

> A reasonable hourly rate is based on the local market rate for the attorney's services.  The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases.

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (internal citation omitted); *accord Vega v. Chi. Park Dist.*, 12 F.4th 696, 705 (7th Cir. 2021).  The fee applicant bears the burden of proving the market rate, but once he provides evidence of that rate, the opposing party may attempt to convince the Court that a lower rate is justified.  *Vega*, 12 F.4th at 705; *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004).  Where out-of-town counsel's rate exceeds that of local practitioners, the Court should still use the counsel's actual billing rate unless the Court finds that a local attorney could have done an equivalent job and there was no reason for out-of-town counsel to perform the work.  *Mathur v. Board of Trustees of S. Ill. Univ.*, 317 F.3d 738, 744 (7th Cir. 2003).

Were this not an action governed by the PLRA, the Court would be satisfied that the rate Cole used—$275 per hour—is appropriate.  And if that is so, the PLRA-limited rate of $246 per hour for work in 2023 is certainly reasonable.

### 2.   Hours Expended

Dr. Larson also complains that Cole submitted bills for work not properly billable, excessive, or unrelated to this litigation.  Dr. Larson object to awarding fees for the work of an administrative assistant.  He also complains that billing entries are vague because he cannot identify what the work was and how they related to the claims on which Belk prevailed,

7

complaining in passing of excessive, redundant, or unnecessary hours and block billing.  He highlights specific entries from Cole's time record (only a handful of which are from 2023) that he believes should be discarded and posits that since only 1 of 13 defendants was found liable, the Court should substantially reduce Belk's request.

The party seeking fees is responsible for documenting the hours worked with the "level of detail that paying clients would be likely to find acceptable."  *Vega v. Chi. Park Dist.*, 12 F.4th 696, 703 (7th Cir. 2021).  An attorney's billing statement should be "sufficiently detailed to permit adequate review of the time billed to specific tasks."  *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008).  The Court should not allow payment for hours spent by counsel that would not ordinarily be billed to a paying client or are easily delegated to non-professional staff such as a secretary.  *See Spegon v. Catholic Bishop of Chi.,* 175 F.3d 544, 553 (7th Cir. 1999).  Such hours are not reasonable or necessary.  *Id.*  The Court may also disallow hours as not reasonably expended if they are "excessive, redundant, or otherwise unnecessary."  *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004).  However, "determining what qualifies as a 'reasonable' use of a lawyer's time is a highly contextual and fact-specific enterprise," so district courts have wide latitude to set awards of attorney's fees.  *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010).

There is nothing inherently wrong with "block billing," although it is not likely to provide the best possible descriptions of an attorney's work.  *See Farfaras v. Citizens Bank & Tr.*, 433 F.3d 558, 569 (7th Cir. 2006).  Nevertheless, it is within professional norms not to itemize bills by every single task.  "[H]aving attorneys keep detailed records is a cost that many clients prefer to avoid," *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999), and block billing can be an acceptable compromise between, on the one hand,

incurring additional fees for keeping microscopically detailed track of time and, on the other hand, accounting for time spent.

As noted above, because the payable fee award is limited to $48,000 dollars, the Court need only review the hours Cole spent on this litigation in 2023—211 hour—most of which were on or related to the claims on which Belk prevailed at trial. That work included wrapping up summary judgment briefing, pretrial preparation, trial, and preparation for post-trial motion briefing. The Court has reviewed the billing entries for 2023 and finds that they contain the level of detail acceptable when billing a private client. Even though they are frequently billed in blocks, the level of detail of the tasks within the blocks is sufficient to allow the Court—and a paying client—to determine what the attorney did and that the time spent for the block of activities was not unreasonable. The 211 hours Cole worked on this case in 2023 were not "excessive, redundant, or otherwise unnecessary," were adequately documents, and were overall reasonable.

3.    Final Calculation

At $246 per hour for 211 hours, the lodestar would yield for 2023 a total reasonable fee of $51,906. The PLRA limits that award to $48,000, which the Court will award in full. This award already reflects the limits of Belk's success; it is the award for the only two claims on which he prevailed. The Court sees no reason to further reduce the award.

The Court must require Belk to pay up to 25% of any fee award. 42 U.S.C. § 1997e(d)(2)(1). Considering the facts of the case, the substantial award by the jury, and the effect such judgments may have to improve pretrial detainee care, the Court shall apply $8,000 of the judgment to satisfy the $48,000 attorney fee award, leaving $40,000 to be assessed against Dr. Larson.

### III.      Costs

Both parties have filed bills of costs (Docs. 336 & 352) claiming to be the "prevailing party"—Belk because he obtained a jury verdict in his favor, and Dr. Larson essentially because that verdict was only on a small part of the case as a whole.  Belk further objects to specific cost items if the Court awards costs to Belk.

Ordinarily the Clerk of Court taxes costs in favor of the prevailing party on 14 days' notice.  Fed. R. Civ. P. 54(d)(1).  Objections may be filed within 14 days of the Clerk's notice. Local Rule 54.2(b).  Costs allowed to be taxed are set forth in 28 U.S.C. § 1920, and only costs in that listing are taxable.  *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000).  The Court presumes that a prevailing party is entitled to costs as a matter of course, *Krocka v. City of Chi.*, 203 F.3d 507, 518 (7th Cir. 2000), but has the discretion to deny or reduce costs where warranted, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).  If the Court reduces or denies costs, it must explain its decision.  *Krocka*, 203 F.3d at 518.

### A.      Prevailing Party

For the purposes of awarding costs under Rule 54(d), a party is "prevailing" if "it prevails as to a substantial part of the litigation."  *Baker v. Lindgren*, 856 F.3d 498, 502 (7th Cir. 2017) (citing *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996)).  Where a party obtains mixed results, the Court has broad discretion to determine if it is prevailing.  *Baker*, 856 F.3d at 502 (citing *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999); *Testa*, 89 F.3d at 447).

The Court has determined that Belk is a prevailing party for the purposes of attorney's fees, and, although the "prevailing party" standard is not the same in the two contexts, *Baker*, 856 F.3d at 503, those reasons apply in the costs context.  Jail personnel's treatment of Belk's

stroke-related symptoms has been a substantial part of this litigation in one form or another from its beginning, and his $32,000 judgment represents success on that part. Although he did not prevail on every claim—and if one were reduced to counting claims, Belk lost more than he won—in the Court's opinion, his main gripe all along has been about the failure to address his post-stroke symptoms and needs. These failures came in different forms—the failure to provide medication and therapeutic aids, the failure to provide a low-sodium diet, the failure to adequately monitor blood pressure, the failure to allow physical rehabilitation or gym time—but he prevailed on his general quest to obtain relief for the failure to provide what he needed to continue healing from his stroke. Belk was the prevailing party for costs purposes, not Dr. Larson. The Court will therefore strike Dr. Larson's bill of costs (Doc. 352).

B.     Objections to Specific Items

Dr. Larson asks the Court to strike several specific charges in Belk's bill of costs:

- *A $50-rush fee for service of each of four trial subpoenas*. The trial subpoenas were served on September 7-9, 2023, for the October 2, 2023, trial, and Belk has not explained why rush service was necessary. "[A]dditional fees associated with rush service are not appropriately compensable without explanation for why they were necessary." *Black v. Wrigley*, No. 17 C 101, 2020 WL 4437677, at *25 (N.D. Ill. Aug. 3, 2020), *aff'd,* 997 F.3d 702 (7th Cir. 2021) (internal quotations omitted). Belk offers no explanation. The Court will reduce the cost for service by $200.00.

- *Vague mileage and mileage rates for witnesses*. Dr. Larson complains that the witness fees listed on the second page of the bill of costs form are not supported by specific number of miles or mileage rates. He proposes his own total mileage cost about $27 less than requested by Belk. The Court is skeptical of Dr. Larson's calculations. For

example, the first itemized witness fee is for Dr. Erynn Elleby for a deposition in Belleville.  Dr. Larson claims that she drove 5.7 miles but does not explain where that distance comes from.  The Court consulted Google Maps and found that, depending on Dr. Elleby's route, the distance between the address at which her subpoena was served to the address at which the subpoena commanded her to attend was anywhere from 16.7 to 19.1 miles, depending on her route.  Belk estimated 18 miles in his form; Dr. Larson was way off at 5.7 miles.  Dr. Larson's error in his first calculation is not a good start and does little to convince the Court that Belk's witness fees were excessive.  Even using the mileage rates proposed by Dr. Larson, Belk's witness fee calculations were fairly accurate.  Accordingly, the Court will award this element of costs.

- *Printing of copies that were not necessary for use in the case*.  Dr. Larson complains that Belk provided no breakdown for $110.10 in copying charges for the 1,101 copies he made in this case so it cannot be determined whether the copies were necessary or merely convenient.  Here, the printing charges are supported by a listing of the number of pages copied and the per-page rate (a reasonable $0.10 per page), and counsel has sworn in his bill of costs that they were necessarily incurred in this action.  And overall, making 1,101 copies in this case seems very reasonable.  Although the charges could be more thoroughly explained, there is sufficient documentation for the Court to find the copies reasonably necessary in this case.

- *Charges for FedEx and other delivery services*.  Belk's itemization of "other costs" includes two Federal Express charges totaling $97.90.  Courier or delivery services are not expressly listed as costs under 28 U.S.C. § 1920, and Belk has provided no authority for reimbursement of such charges as costs.  Accordingly, he has not met his burden of

proving the expense reimbursable as a cost.

After making the foregoing adjustments to Belk's bill of costs (Doc. 336), the final cost amount is $5,909.27, which shall be taxed against Dr. Larson.

## IV.  Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Belk's motion for attorney's fees (Doc. 337);

- **AWARDS** Belk attorney's fees in the amount of $48,000.  Of that amount, $8,000 of Belk's $32,000 judgment shall be applied to satisfy the attorney's fee award against Dr. Larson, leaving Dr. Larson responsible for paying attorney's fees in the amount of $40,000;

- **STRIKES** Dr. Larson's bill of costs (Doc. 352);

- **APPROVES** Belk's bill of costs with adjustments (Doc. 336);

- **AWARDS** costs to Belk in the amount of $5,909.27; and

- **DIRECTS** the Clerk of Court to enter a judgment of fees and costs accordingly.

**IT IS SO ORDERED.**
**DATED:  March 21, 2024**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

13